# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## ROANOKE  DIVISION

| | | |
|---|---|---|
| **JONATHAN LEE GRAHAM,** | ) | |
| | ) | |
| Petitioner, | ) | Case No. 7:14CV00085 |
| | ) | |
| v. | ) | **OPINION** |
| | ) | |
| **HAROLD CLARKE, DIRECTOR,** | ) | By:  James P. Jones |
| **DEPARTMENT OF CORRECTIONS,** | ) | United States District Judge |
| | ) | |
| Respondent. | ) | |

*Jonathan Lee Graham, Pro Se Petitioner; Craig W. Stallard, Assistant Attorney General, Office of the Attorney General of Virginia, Richmond, Virginia, for Respondent.*

The petitioner, Jonathan Lee Graham, a Virginia inmate proceeding pro se, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Graham challenges the validity of his confinement following his state conviction for malicious wounding of a law enforcement officer and related offenses.  Upon review of the record, I find that the respondent's Motion to Dismiss must be granted.

## I.

Graham and Sarah Plummer, the mother of Graham's young son, spent the evening of August 14, 2006, at Graham's newly-rented trailer, drinking beer and

vodka.[1]  Graham took a cab to refresh the drink supply and smoked crack cocaine on his way back.  Around eleven o'clock, without explanation to Sarah Plummer, Graham ran out the door and down the road.  He thought someone was trying to harm him and he knocked on neighbor's doors, asking for help.[2]

Keith Dunagan, Chief Deputy Sheriff for Wythe County, was at his home that evening, not far from Graham's trailer.  His wife heard a person outside yelling for help and that someone was trying to kill him.  Dunagan did not see anyone, but told his wife to lock the door and call dispatch.  He then took his badge, gun, and flashlight and went to investigate.

Deputy Sheriff Ray Danner responded to the call from dispatch for assistance with a person calling for help near Chief Deputy Dunagan's home.  As Danner neared that neighborhood, his headlights shone on a shirtless male, who ran across the road in front of the car.[3]  Danner braked and slid his vehicle sideways across the road.  Getting out of the car, he heard the man yelling that

---

[1]  This summary of events is taken from the testimony of the parties during Graham's suppression hearing, his change-of-plea hearing, and his sentencing hearing. All of these proceedings and others were transcribed in one, continuously numbered transcript ("Tr.").

[2]  Graham testified at his sentencing that he had fallen and lost his glasses, without which he is legally blind.  Deputy Sheriff Danner, however, testified that Graham was wearing his glasses when Danner first encountered him.

[3]  Graham testified that he had been sitting on the guardrail, trying to calm down, when Danner's vehicle arrived at the scene and that he had not recognized Danner without his glasses.

someone was trying to kill him. Danner drew his gun, announced himself as a deputy, and ordered the man to stop. Instead, the man ran along the guardrail and up a bank. Danner then recognized Graham from prior encounters, yelled his name, Jonathan, and repeatedly ordered him to stop and lie down on the ground. Finally, Graham lay face down on the grass, still yelling. He kept moving his hands under his waist area, despite Danner's order to keep his hands in sight. Graham was yelling that Officer Boggs was trying to kill him.[4] Danner did not know if Graham was fleeing an attacker or was himself an aggressor. He did not see any weapon, but he did not know if Graham might be reaching for one under his body to defend himself against the person about whom he was yelling.

About this time, Dunagan arrived at the scene. Graham, who was drenched with sweat, continued yelling about someone trying to kill him and begging for help. Other times, Graham would yell for the deputies to kill him. Danner testified that "[Graham] was like he was almost out of his mind [and] he just talked way out of the realm of a normal conversation," even when Danner said he was there to help. (Tr. 61.) Dunagan and Danner decided to handcuff Graham for his own safety.

---

[4] Graham alleges that a year earlier, Boggs, a police officer for the Town of Wytheville, had brought a charge of assault and battery against Graham, which had been dismissed.

With Dunagan ready to assist, Danner holstered his gun, retrieved his handcuffs, came to one knee, and took Graham's right hand behind his back to apply the cuffs. Graham then jerked his hand away, tried to stand up, and resisted the officers' efforts to hold him by kicking, striking out with his hands, pinching, biting, and head butting. The struggle continued for half an hour, while Graham and the deputies rolled some fifty feet down the hill. The deputies tried to apply restraint techniques from their training, but they could not keep hold of Graham's sweaty limbs. Danner applied pepper spray to Graham, but with no visible effect.

At one point, Graham bit down on Dunagan's forearm and held on. Dunagan struck Graham repeatedly in the head and jaw, with a flashlight and with his fist, trying to make Graham release the bite. Finally Graham was handcuffed, and Danner called for assistance. Four other officers came to the scene and assisted in securing Graham. Fully restrained in cuffs and shackles, with additional handcuffs behind his back to keep him from kicking out the windows of the police cruiser, Graham continued to flail and kick at the officers. He continued to yell about someone trying to kill him even as the officers placed him in a police cruiser for transport to the hospital.

Dunagan suffered a broken right hand and bite wounds in both arms, one of which required stitches. Danner had eleven bite wounds on his arms. Both deputies had multiple scratches and bruises, as did other officers who had contact

with Graham. Another deputy received a bite on his finger, through his leather glove, that broke the skin.

Based on these events, Graham faced multiple felony indictments, misdemeanor warrants, and probation violation warrants. His attorney moved to suppress the evidence from the altercation with the deputies, arguing that Danner's initial seizure of Graham was unlawful under the Fourth Amendment.

At a suppression hearing on June 28, 2007, the deputies described their roles in the foregoing events. Sarah Plummer testified that she had witnessed two officers detaining Graham. She testified that when they ordered Graham to stop and lie down on his stomach, Graham did so immediately, with his hands stretched above his head, and the officers cuffed both hands behind Graham's back. According to Plummer, another officer came a few minutes later and cuffed Graham's ankles to each other. Then, she said, the officers had connected the handcuffs and shackles together behind Graham's back, dragged him across some gravel, and threw him in a ditch. Plummer testified that, with four or five officers on Graham's back after he was "hog tied," he had told them that he could not breathe and bit one officer's knuckle; the officer then struck Graham on the head with a flashlight and his fist, and all the officers threatened to bring assault charges against Graham. Plummer testified that she did not see Graham strike, kick, or bite the officers, other than the one bite.

On cross examination, Plummer testified that Graham had not taken his mental health medication that evening and had drunk large amounts of beer and vodka. Asked about Graham's behavior when he left the house, Plummer testified, "I mean he was in touch with reality, but he wasn't . . . he was just kind of on a different type of level." (Tr. 24.)

Based on the circumstances, the trial court ruled that the seizure was lawful under *Terry v. Ohio*, 392 U.S. 1, 30 (1968). Accordingly, the court denied Graham's Motion to Suppress.[5]

Several months later, in October 2007, Graham pleaded guilty in the Wythe County Circuit Court to one count of malicious wounding of a law enforcement officer, three felony counts of assault of a law enforcement officer, and misdemeanor charges of obstruction of justice and resisting arrest. On February 27, 2008, the court sentenced Graham to a total of thirty-five years and twenty-four months incarceration.[6] Graham, by counsel, appealed unsuccessfully to the Court of Appeals of Virginia and the Supreme Court of Virginia.[7]

---

[5] At sentencing, Graham testified that he had fought back against the officers in a panic because he could not breathe, and they were hurting him.

[6] In the same proceedings, Graham also pleaded guilty and was sentenced on unrelated misdemeanor charges of trespass, assault and battery, and destruction of property.

[7] On appeal, Graham contended that the trial court erred in accepting his pleas of guilty on four felony counts and five misdemeanor charges after one plea colloquy.

In his timely pro se state habeas petition to the circuit court, Graham alleged trial court errors, prosecutorial misconduct, and ineffective assistance of counsel. The habeas court dismissed the petition in a written Order dated April 18, 2013. Graham's pro se habeas appeal to the Supreme Court of Virginia was unsuccessful.

In his timely federal habeas petition, Graham alleges the following grounds for relief, which substantially track the grounds raised in his state habeas proceedings: (A) Graham was never read his *Miranda* warnings and never signed any waiver; (B) the trial court erred in not ordering a psychological evaluation and obtaining mental health records prior to accepting Graham's plea of guilty; (C) counsel was ineffective for failing to investigate whether Graham was competent when he entered his plea of guilty; (D) Graham was subject to an unreasonable seizure accomplished by excessive force; (E) Deputy Danner and Officer Watson, another officer at the scene, offered perjured testimony at the suppression hearing; (F) the prosecutor committed misconduct by "protect[ing]" the officers and "maliciously" prosecuting Graham for behavior allegedly caused by his mental illnesses (Pet'r's Mem. Supp. 22-25, ECF No. 1-2); and (G) counsel was ineffective due to a lack of preparation and egregious tactical errors, in that he (1) failed to do any pretrial investigation; (2) failed to seek a psychological evaluation of Graham; (3) failed to recognize that Graham was never read his Miranda warnings; (4) failed to prepare for the suppression hearing; (5) failed to interview

eyewitnesses; (6) failed to use Sarah Plummer's testimony effectively; (7) failed to challenge conflicting testimony and statements; (8) failed to use the police officers' prior disciplinary records to establish that they were the aggressors; (9) failed to introduce medical records of Graham's treatment after his arrest; (10) failed to be an advocate during the plea hearing; and (11) failed to challenge the Commonwealth's use of Graham's prior convictions while presenting prejudicial evidence at sentencing. The respondent has filed a Motion to Dismiss, and has forwarded the pertinent state court records. Graham has responded, making the matter ripe for consideration.

## II.

### A. Procedurally Defaulted Claims.

A habeas claim is procedurally defaulted and barred from federal habeas review if "a state court has declined to consider the claim's merits on the basis of an adequate and independent state procedural rule."[8] *Hedrick v. True*, 443 F.3d 342, 359 (4th Cir. 2006) (internal quotation marks omitted). A petitioner may overcome such a procedural bar by showing "cause for the default and prejudice from the asserted error" or by establishing that his confinement falls within the

---

[8] The respondent submits that because Graham has presented all of his claims to the Supreme Court of Virginia for review in his state habeas proceedings, he has exhausted available state court remedies as required under 28 U.S.C. § 2254(b)(1)(A). *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999) (finding exhaustion requires presentation of claim to highest state court with jurisdiction).

Case 7:14-cv-00085-JPJ-RSB   Document 21   Filed 03/24/15   Page 8 of 23   Pageid#: 243

"miscarriage-of-justice exception" to the procedural bar because he has made a proper showing of actual innocence. *House v. Bell*, 547 U.S. 518, 536-37 (2006).

The respondent argues that Graham's claims (A), (B), (D), (E), and (F) are procedurally barred from federal habeas review. I agree.

In addressing Graham's state habeas petition, the circuit court dismissed these five claims under the procedural rule in *Slayton v. Parrigan*, 205 S.E.2d 680, 682 (Va. 1974). *Slayton* precludes a Virginia court from reviewing a non-jurisdictional claim in a state habeas petition if it "could have been raised and adjudicated at petitioner's trial and upon his appeal." *Id.* The United States Court of Appeals for the Fourth Circuit has "repeatedly recognized that the procedural default rule set forth in *Slayton* constitutes an adequate and independent state law ground for decision." *Fisher v. Angelone*, 163 F.3d 835, 844 (4th Cir. 1998) (internal quotation marks and citation omitted). Consequently, I find that Graham's federal habeas claims (A), (B), (D), (E), and (F) are procedurally barred from federal habeas review, unless he shows cause and prejudice or actual innocence. *House*, 547 U.S. at 536-37.

Graham does not assert any cause for his failure to raise his procedurally barred claims at trial or on direct appeal. He does, however, state that he is actually innocent of the offenses for which he stands convicted, based on his

mental illness diagnoses,[9] psychotropic medications, and undisputed evidence that he was delusional at the time he committed those offenses.

A petitioner "asserting innocence as a gateway to defaulted claims must establish that, in light of new evidence, 'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'" *Id.* at 536-37 (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995)). It is well established in Virginia, however, that voluntary intoxication furnishes no excuse for the commission of a criminal offense. *See, e.g., Swisher v. Commonwealth*, 506 S.E.2d 763, 772 (Va. 1998) (holding that generally voluntary intoxication is no defense to any crime with the exception of deliberate and premeditated murder); *Jordan v. Commonwealth*, 25 S.E.2d 249, 250 (Va. 1943) (finding voluntary intoxication, even when it may have "produced temporary insanity during the existence of which the criminal act was committed . . . would afford no excuse").

Under this precedent, Graham cannot show actual innocence under *Schlup*. Graham presents no evidence that his mental health problems caused his delusional mental state or the aberrant and assaultive behavior for which he was charged and

---

[9] Graham states that at the time of the offenses, he had a history of mental illness and had been committed to Marion Correctional Treatment Center for mental health treatment. A diagnosis report on Graham, dated April 15, 2003, and included with his petition, indicates diagnoses of "[b]ipolar disorder type II, depressed with substance induced mood disorder overlying secondary to alcohol abuse, . . . [p]ost traumatic stress disorder, . . . [a]nxiety disorder, . . . and [p]aranoid personality disorder with antisocial traits." (Pet'r's Mem. Supp. 31, ECF No. 1-2.)

convicted. Rather, the undisputed evidence is that Graham voluntarily failed to take his mental health medication and ingested alcohol and crack cocaine that night, which fueled his offense conduct. Because his voluntary intoxication is no excuse for his criminal acts, Graham has not shown actual innocence as a gateway around procedural default. Therefore, I will grant the Motion to Dismiss as to claims (A), (B), (D), (E), and (F), as they are procedurally barred from federal habeas review.

### B. Ineffective Assistance Claims.

To prove that counsel's representation was so defective as to require reversal of the conviction or sentence, the petitioner must meet a two-prong standard, showing that counsel's defective performance resulted in prejudice. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). First, the petitioner must show that "counsel's representation fell below an objective standard of reasonableness," considering circumstances and facts known to counsel at the time of the representation. *Id.* at 687-88. The petitioner must overcome a strong presumption that counsel's performance was within the range of competence demanded from attorneys defending criminal cases. *Id.* at 689.

Second, to show prejudice, the petitioner must demonstrate "a reasonable probability" that but for counsel's errors, the outcome would have been different. *Id.* at 694-95. When the petitioner alleges that counsel's error led him to enter an

invalid guilty plea, he can show prejudice only by demonstrating "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). If it is clear that the petitioner has not satisfied one prong of the *Strickland/Hill* test, the court need not inquire whether he has satisfied the other prong. *Strickland*, 466 U.S. at 697.

Because the state courts adjudicated Graham's ineffective assistance claims on the merits,[10] the nature of my review is set forth in 28 U.S.C. § 2254(d).[11]

---

[10] The state circuit court denied habeas relief on Graham's ineffective assistance claims for reasons stated in a written order, while in his habeas appeal, the Supreme Court of Virginia denied relief without stating its reasons. For purposes of federal habeas review, this court must presume that both courts adjudicated and rejected each of Graham's claims on the same legal grounds. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991).

[11] When reviewing a claim adjudicated on the merits by a state court, a federal court may grant habeas relief only if the state court adjudication (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. §§ 2254(d)(1), (d)(2). A state court's adjudication is considered contrary to clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). A state court decision unreasonably applies clearly established federal law if the court identifies the correct legal principle, but unreasonably applies it to the facts of the case. *Id.* at 413. It is not enough that a state court applied federal law incorrectly; relief may only be granted if the application of federal law is unreasonable. *Id.* at 411. Factual determinations made by the state court are "presumed to be correct," and the petitioner has the burden of rebutting that presumption of correctness by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

Case 7:14-cv-00085-JPJ-RSB   Document 21   Filed 03/24/15   Page 12 of 23   Pageid#: 247

Under § 2254(d), federal habeas relief "may be granted only if the state-court decision unreasonably applied the more general standard for ineffective-assistance-of-counsel claims established by *Strickland. . . .*"  *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009).  Thus, a "doubly deferential judicial review . . . applies to a *Strickland* claim evaluated under the § 2254(d)(1) standard."  *Id.* at 123. "The question 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable — a substantially higher threshold.'"  *Id.* (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)).  "And, because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard."  *Id.*

As to each of Graham's ineffective assistance claims, the state habeas courts found that Graham failed to meet his burden to show deficient performance and resulting prejudice under *Strickland* and *Hill*.  Under § 2254(d), I find that this disposition was not contrary to, or an unreasonable application of, established federal law, and was not based on an unreasonable determination of the facts in the state court record as to any of Graham's habeas claims.

In claims C and G(2), Graham asserts that counsel was ineffective for failing to investigate whether he was competent when he entered his pleas of guilty.

-13-

Trial of criminal charges against an incompetent defendant violates due process. *Bishop v. United States*, 350 U.S. 961 (1956). The federal standard for competency to stand trial is "whether [the defendant] has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding — and whether he has rational as well as factual understanding of the proceedings against him." *Dusky v. United States*, 362 U.S. 402, 402 (1960). Under Virginia Code §19.2-169.1(A), upon evidence that the defendant "lacks substantial capacity to understand the proceedings against him or to assist his attorney in his own defense, the court shall order that a competency evaluation be performed."[12]

Graham's claim that counsel should have asked for a competency evaluation is belied by the record and Graham's own habeas pleadings. The state habeas courts found from Graham's answers during the plea colloquy that his guilty plea was valid, and under § 2254(e)(1), I must presume those findings of fact are correct, absent clear and convincing evidence to the contrary.

---

[12] To the extent that Graham is claiming that counsel should have requested an evaluation of his mental state at the time of the offenses for defense purposes, I find no deficient performance. As previously stated, voluntary intoxication is no excuse for criminal conduct. *Swisher,* 506 S.E.2d at 772. The record before the court indicated that at the time of his offense conduct, Graham voluntarily failed to take his mental health medication and became intoxicated. Moreover, Graham does not claim that he wished to present an insanity defense at trial.

-14-

Graham has made no such showing.[13]  On the contrary, Graham testified at sentencing that his conduct resulted from his drug and alcohol intoxication, not his mental health issues.  Moreover, Graham's pleadings indicate that he and his attorney discussed at length, and Graham fully understood, the options of going to trial with a possible mental health defense or pleading guilty.  In his habeas appeal petition to the Supreme Court of Virginia (ECF No. 20), Graham describes the frequent discussions he and counsel had about his case.  Graham told counsel that he did not assault the officers and did not know how they could charge him after assaulting him.[14]  Counsel told Graham, however, that the physical evidence of the officers' injuries bolstered their testimony, Plummer's testimony was not credible,

---

[13] Graham's testimony at the plea hearing reflected that he was an adult and had completed high school and some college courses.  He affirmed to the court that he was satisfied with counsel's services and had discussed with counsel and fully understood the charges, the elements the Commonwealth was required to prove on each charge, and possible defenses and plea options.  Graham also agreed that he was pleading guilty to the charged crimes because he was, in fact, guilty.  These representations by Graham in open court "carry a strong presumption of verity. The subsequent presentation of conclusory allegations [on collateral review] unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977).  Graham's claim that he was not competent to enter his pleas of guilty is "wholly incredible" compared to his representations to the court that his plea was knowing and voluntary and, therefore, valid.

[14] Graham states that he filed a pro se civil rights action against the officers under 42 U.S.C. § 1983, alleging excessive force on arrest, but erroneously asserts that he dropped the case after his attorney advised him that it would hamper his criminal plea negotiations.  However, the records of this court show that in fact Graham did pursue his § 1983 lawsuit, which was ultimately dismissed after an evidentiary hearing.  *Graham v. Dunagan*, No. 7:08-cv-00260, 2009 WL 440633 (W.D. Va. Feb. 20, 2009), *report and recommendation accepted in part*, 2009 WL 650404, at *2 (W.D. Va. Mar. 10, 2009).

and a jury hearing the evidence might recommend a seventy-year sentence. Counsel also explained that if Graham was found not guilty by reason of insanity, he could be involuntarily committed for mental health treatment for years. Counsel explained that if Graham pleaded guilty, the Commonwealth would dismiss some charges, the judge would determine the sentence from the guidelines after a presentence report and might credit Graham for accepting responsibility, and would have authority to suspend some portions of the sentence. Graham stated, "I took my attorney's advice and pleaded guilty. . . ." (State Habeas Appeal Pet. 21, ECF No. 20.)

Thus, Graham's own allegations and the trial record support the state courts' conclusion that counsel had no reason to question Graham's competency and no factual basis on which to move for a competency evaluation. Even now, Graham has failed to present any facts that generate a legitimate and substantial question as to his competence to enter his guilty pleas. For the stated reasons, I will grant the motion to dismiss as to claim C and G(2).

In claim G(1), Graham alleges that counsel was ineffective for failing to do any pretrial investigation.

Defense counsel has a duty to make reasonable investigation into mitigating factors. *Strickland*, 466 U.S. at 691. However, Graham offers no evidence to demonstrate what such additional investigation would have revealed or how it

would have helped the defense. Graham's unsupported conjecture is inadequate. This failure to proffer alone is fatal to his claim. *See Beaver v. Thompson*, 93 F.3d 1186, 1195 (4th Cir. 1996) (stating that "an allegation of inadequate investigation does not warrant habeas relief absent a proffer of what favorable evidence or testimony would have been produced."); *Bassette v. Thompson*, 915 F.2d 932, 940-41 (4th Cir. 1990) (explaining that petitioner must allege "what an adequate investigation would have revealed."). "[W]ithout a specific, affirmative showing of what the missing evidence or testimony would have been, 'a habeas court cannot even begin to apply *Strickland*'s standards because it is very difficult to assess whether counsel's performance was deficient, and nearly impossible to determine whether the petitioner was prejudiced by any deficiency in counsel's performance.'" *Anderson v. Collins*, 18 F.3d 1208, 1221 (5th Cir. 1994) (quoting *United States ex rel. Partee v. Lane*, 926 F.2d 694, 701 (7th Cir. 1991)). Under § 2254(d), I will grant the Motion to Dismiss as to claim G(1).

In claim G(3), Graham contends that counsel was ineffective for failing to litigate the fact that the officers did not advise Graham of his *Miranda* rights until hours after his arrest.

The Supreme Court has long recognized that *Miranda* warnings are implicated only during a custodial interrogation. *Oregon v. Mathiason*, 429 U.S. 492, 494-95 (1977)). Because the record indicates that Graham was never subject

to a custodial interrogation, counsel had no factual or legal basis to argue that Graham did not receive *Miranda* warnings. Therefore, under § 2254(d), I will grant the Motion to Dismiss as to claim G(3).

In claim G(4), Graham alleges that counsel was ineffective for failing to prepare for the suppression hearing. Trial counsel filed a Motion to Suppress, claiming Graham's seizure was in violation of the Fourth Amendment because the officers had no indication at the time of the seizure that Graham had committed or was committing a crime. Counsel subpoenaed Sarah Plummer as a witness, conducted direct examination of his witness and cross-examination of the Commonwealth's witnesses, and argued to the trial court why Graham's seizure was in violation of the Fourth Amendment. From the record, it is clear that counsel was prepared for the suppression hearing. Counsel cannot be found ineffective merely because the trial court did not credit Plummer's account, ruled against counsel's arguments for suppression, and held that the seizure was a proper *Terry* stop. Consequently, under § 2254(d), I will grant the Motion to Dismiss as to claim G(4).

In claim G(5), Graham alleges that counsel was ineffective for failing to speak to unidentified individuals who were seen observing Graham's arrest. There is no evidence in the record, and Graham has not proffered any evidence in his petition, as to who these witnesses were, whether they would have agreed to speak

to counsel, or what they would have testified to at trial. This failure to proffer alone is fatal to his claim. *Beaver*, 93 F.3d at 1195. Accordingly, I will grant the Motion to Dismiss as to claim G(5) under § 2254(d).

In claim G(6), Graham asserts that counsel was ineffective for failing to use the testimony of Sarah Plummer effectively. The claim is directly refuted by the record. Counsel called Plummer as a witness during the suppression hearing, and she testified fully about her observations of Graham's arrest. The trial court did not credit her testimony, however, as it contradicted the credible testimony of the deputies and the physical evidence. The believability of Plummer's account was also severely undercut by her obvious bias, as the mother of Graham's child, her admission that she had been drinking on the evening of Graham's arrest, and her absence from the scene for a time when she returned to the trailer to retrieve her cell phone. Graham has failed to assert how counsel could have used Plummer's testimony any more effectively than he did. Therefore, under § 2254(d), I will grant the Motion to Dismiss as to claim G(6).

In claim G(7), Graham alleges that counsel was ineffective for failing to challenge conflicting testimony and statements. Specifically, Graham asserts that counsel was ineffective for failing to challenge the testimony of Deputy Danner and Officer Watson, when they made conflicting statements at the suppression

hearing and at an evidentiary hearing in this court during the litigation of Graham's § 1983 lawsuit.

Graham has failed to establish that the statements were inconsistent as to any matter material to the Commonwealth's case against him. More importantly, the allegedly "conflicting" statements were made at different times and in different venues. At the time of the suppression hearing, neither Deputy Danner nor Officer Watson had made any statements in federal court, so there were no statements to challenge. Therefore, under § 2254(d), I will grant the Motion to Dismiss as to claim G(7).

In claim G(8), Graham asserts that counsel was ineffective for failing to introduce unspecified records of incidents when the deputies and officers had used excessive force against suspects in the past to demonstrate that the police were the aggressors.

Graham has failed to proffer any such records or to state any basis for belief that they exist. He also has failed to proffer how they would have been relevant and material during the suppression or sentencing hearings — the only criminal proceedings in which the officers testified. This failure to proffer alone is fatal to his claim. *Beaver*, 93 F.3d at 1195. Consequently, under § 2254(d), I will grant the Motion to Dismiss as to claim G(8).

In claim G(9), Graham alleges that counsel was ineffective for failing to introduce his medical records from Wythe County Community Hospital Emergency Room. Graham has failed to proffer these medical records. Moreover, that Graham suffered injuries as a result of his confrontation with the arresting officers was not in dispute. The officers testified about the extensive physical force they used to control and arrest Graham in his intoxicated state. Thus, I find no issue material to the suppression or sentencing hearings on which Graham's medical records would have had any favorable effect. Accordingly, under § 2254(d) I will grant the Motion to Dismiss as to claim G(9).

In claim G(10), Graham claims that counsel was not an advocate at the plea hearing. In the state habeas proceedings, Graham specifically faulted counsel for informing the court that the charging document misidentified the malicious wounding of a law enforcement officer as a class 3 felony, when the charge was, in fact, a felony with a higher penalty. Because counsel's statement of the law was correct, the state habeas court found that Graham failed to establish either deficient performance or prejudice as required by *Strickland* and *Hill*. For the same reason, I will grant the Motion to Dismiss as to claim G(10).[15]

---

[15] Graham's factual support for claim G(10) in his federal petition faults counsel for interrupting Graham's answer to the court's question about whether he and the attorney had discussed possible mitigating circumstances regarding the mandatory minimum sentences Graham faced. Counsel immediately stated: "We certainly discussed mitigating circumstances in the case Your Honor." The court said: "All right," and

In claim G(11), Graham asserts that his attorney was ineffective for failing to challenge the Commonwealth's use of prior convictions at sentencing and that the attorney even reinforced the prosecution's case by describing details of Graham's assaults on the deputies. The Commonwealth's evidence presented from the presentence report, the probation officer's testimony about Graham's criminal history, his multiple probation violations, and his unsuccessful substance abuse treatment, as well as the deputies' testimony about their injuries and medical treatment, was reliable, relevant, and material. Graham has failed to identify any factual or legal basis on which counsel could successfully have objected to such evidence. Counsel cannot be ineffective for failing to raise an objection or make a motion for which there is no obvious basis. *See Clanton v. Bair*, 826 F.2d 1354, 1359 (4th Cir. 1987).

Moreover, the record reflects that counsel did, in fact, advocate for Graham at sentencing. The court upheld counsel's objection to consideration of victim impact statements about the deputies' families. (Tr. 130.) Counsel also cross examined the deputies, eliciting testimony suggesting that restraining Graham in his unstable state triggered the very behavior for which he was convicted and

---

Graham stated: "Yes." (Tr. 108.) Because Graham did not present these facts in support of the state habeas claim, this court cannot consider them. *See Cullen v. Pinholster*, 131 S. Ct. 1388, 1400 (2011) (holding that federal review of state court's judgment for reasonableness is limited to facts presented to the state court). In any event, in regard to the colloquy of which Graham complains, I find no deficient performance or resulting prejudice under *Strickland* and *Hill*.

asking why they did not simply let Graham calm down on his own. In his argument on appropriate sentencing, counsel emphasized that by pleading guilty, Graham had accepted responsibility for becoming intoxicated. He argued that the deputies' injuries were caused, at least in part, by the deputies' choice to attempt physical control. Graham has not demonstrated that counsel's tactical decisions at sentencing were professionally deficient or showed a reasonable probability that some different strategy would have resulted in a better sentencing outcome. Finding no merit to Graham's allegations, I will grant the Motion to Dismiss as to claim G(11).

III. Conclusion.

For the stated reasons, I conclude that Graham's habeas claims are either procedurally barred or without merit, and the state courts' adjudication of his petition is reasonable and precludes federal habeas relief under § 2254(d)(1). Accordingly, I will grant the Motion to Dismiss.

A separate Final Order will be entered herewith.

DATED: March 24, 2015

/s/ James P. Jones
United States District Judge

-23-